Our next case is Shirley v. Tegels. Good morning. Mr. Dvorak. Thank you, Your Honor. May it please the Court, I represent Richard Shirley in this habeas petition. Mr. Shirley is an inmate at an Elizabethan correctional institution. He's closing in on his 15th year of a 25-year incarceration section of a 35-year sentence. The Court had ordered Mr. Shirley in his murder trial to testify while seated in a wheelchair. In my 49 years, I've not heard of that before, but the Court also then ordered that he be shackled to that wheelchair, which introduced the problem for Mr. Shirley that while he's sitting there, the introduction of the metal of the wheelchair with his chains would cause clanging, essentially freezing his lower half of his body while testifying in a self-defense case. Now, Mr. Dvorak, you said that the Court ordered it. That was a Milwaukee County Sheriff's Department policy? Yes. As to which the trial counsel, Mr. Chernin, objected early on, correct? Correct. He objected at the time that Mr. Shirley made the decision to take the stand. If there was any such objection early on in the case, it might not have been on the record, it would only have been alluded to? The issue arose because a juror observed Mr. Shirley. The juror was seated behind counsel tables. The counsel tables were skirted, as they usually are. And a juror had observed it and responded to a question about, does anybody feel that he's guilty because he's sitting here? And a juror says, well, if he's sitting there and shackles, yeah, probably. There's something wrong. That eventually caused an in-chamber conference. At that time, Mr. Chernin, the attorney for Mr. Shirley, said, you know, this is really a problem of bad policy with the Sheriff's Department. Now, does that constitute an objection? I guess in a left-handed one, perhaps. And let's accelerate that, Mr. Dvorak, to the time when Mr. Shirley is on the witness stand. Yes. And he is shackled at that point. He's out of the wheelchair. He has the prosthetic leg, but he is in the witness stand when he's testifying. Is that correct? No. He is in the wheelchair, shackled to the wheelchair, on the witness stand. So your understanding of the record is that the wheelchair was placed on the witness stand. Is that correct? That's my understanding of the record, yes. You may continue. Thank you. Yes. And, you know, our position, Judge, is, you know, it's important to note, I think, that the reason, the only reason the judge ordered this to happen was in sole allegiance to the Sheriff's policy. And I don't use the word allegiance lightly because the trial court in this case, during that discussion in chambers at jury selection, made the comment that neither in this case, nor ever in his tenure as judge, does he intend to take on the Sheriff's Department policy. That's important. That's important because, you know, there may be an issue about, there's an issue about whether or not Mr. Ternan never asked that he provide a demonstration. But it demonstrates the futility of even asking for that. My brief expands on that much more than that. That's just one small part of it. Mr. DeBark, before we lose our time, is there clear Supreme Court precedent on the ability for Mr. Shirley to defend himself in non-visible restraints? Well, there, I, yes. In the sense, in the sense that if you apply the unreasonable application part of the 2254 D, because he has, it implicates his right, number one, to testify. It implicates his right to have a complete opportunity to, a full and fair opportunity to defend himself. It implicates those rights. And DEC applies, I believe, yes. Go ahead. And DEC applies the circumstance because at the time that Mr. Shirley made the objection, or that decided to take the stand, we already know that a juror had observed him shackled. There's that interstitial point, though, there, where Mr. Chernin makes a representation to Judge Brash that he has consulted with Mr. Shirley and Mr. Shirley's family, and they want to go ahead with the jury, correct? Correct. Right. And that's why the issue that I'm raising here is focused on the testimony part, not the entire, necessarily the entire trial. And it's why I limited my brief, even though my certificate of appealability was a little broader. I really want to focus on the impact of forcing somebody to testify in shackle under these circumstances in a murder case where, one, you're not the aggressor. Number two, this whole thing was a friendly exchange from the very beginning, and the victim is the one that did it. Mr. Shirley gets involved in this struggle that was prompted by the deceased. And, you know, at that point, what's he going to do? He's a handicap because he was six weeks into a new prosthesis. He's, you know, he's involved in the middle of a struggle. Counsel, I understand, I think, your argument that some of the reasoning of DEC should be extended to restraints that are not visible. But to the extent you're asking for an extension of existing Supreme Court precedent, you've got a problem, right? I'm not asking for an extension. I submitted, you know, supplemental authorities that that language has been withdrawn. We don't need to go there. Number one, shackling, number one, we're not asking for anything unusual here. The Wisconsin Supreme Court didn't, you know, said flat out if you're going to shackle, so you can't shackle somebody at trial unless you have a good reason to do that. Typically, it goes on to say, you know, but, you know, if your shackles are, you know, jury can't see the shackles, generally you can't show prejudice. But the general rule in Wisconsin is you can't shackle somebody without a good reason, without explaining a reason. So, you know, I don't know if that answers your question. Well, DEC tells us that at least with visible restraints that's going to be true, right, as a matter of federal constitutional law. Does DEC extend to audible restraints? And is there any record here about sound, the sound of restraints being a problem? No, and that's part of the problem in defending a case like this. What we do have is Mr. Shirley's affidavit saying that he was concerned. I mean, he was very aware of the shackles, and he was very aware that the clinging of the shackles would betray the fact that he was shackled as he was sitting there. You know, we've got, you know, in terms of shackling, we've got common law goes way back that said you can't shackle people. We've got Youngberg v. Romero in which Justice Powell says that freedom of restraints is a core principle of due process. We have DEC, which talked about shackling. It talked about it in the context of physical shackling, but it introduced also the fact that it can impact someone's ability to testify. It's the judge, Justice Thomas, in White v. Wood, Justice Thomas left open the door. When you talked about Ramdis, and that's the case, the door is open for circumstances where the right we're talking about is fundamental enough, and the application is beyond doubt. In this court, in Long v. Pfister, which was an en banc decision that reversed a panel decision granting a writ, this court also opened the door, did not say, apply this very strict thing, and said when things are bad enough, when the application is inevitable, in the words of that case, the court can still reach the issue. This was, in my view, an extreme malfunction. This case presents as justice, well, one of the needles in the haystack of habeas cases that the court sees, and that justice and law require that this court, this court, number one, has the ability to step in and keep things on the rails. And I'm sorry my time is up. I had hoped to preserve some, but thank you. You have used your time. Ms. Vandermuse.  We are asking this court to affirm the district court's denial of Shirley's habeas petition because, first and foremost, the Wisconsin Court of Appeals decision on the issue before the court was not contrary to clearly established federal law. The United States Supreme Court has never held that the constitutional right to present a defense includes the right to be free of hidden leg restraints in order to approach exhibits or reenact an event while testifying. That aside, the Court of Appeals reasonably decided here that the hidden leg restraints did not prevent Shirley from effectively participating in his defense. But even if Shirley had shown that the Court of Appeals decision was contrary to or an unreasonable application of clearly established federal law, he has not shown that the hidden leg restraints affected his extensive testimony on the stand so significantly that it influenced the jury's verdict. So turning to what we believe is the dispositive point, the Court of Appeals decision was not contrary to clearly established federal law. Clearly established federal law refers to the holdings and legal principles that derive from the holdings of the United States Supreme Court. So pertinent here, the Supreme Court has established that the right to present a complete defense includes the defendant's right to testify on his or her behalf about the circumstances bearing directly on guilt or innocence. The Supreme Court has also held that the right to present a defense includes access to evidence. So evidentiary rulings or categorical rules that exclude evidence have been held to, under certain circumstances, run afoul of this constitutional right. But here, Shirley cites no case, let alone a United States Supreme Court case, that holds that this constitutional right includes the right to be free of hidden restraints, to approach exhibits, or to provide a physical demonstration while testifying. The cases that he cites in his brief, as we explained, pull language that frames the issues in such a general manner that it does not constitute clearly established federal law. And further, while he discusses the second principle in the Deck decision, as this court has acknowledged in its Wilbur decision last year, Deck pertains to a rule prohibiting the use of visible restraints absent articulated justification. So we are not in Deck with respect to the claim at issue before the court. Do you think Deck is limited to visible restraints and would not extend to audible chains? There's evidence that the jury heard chains. Yes. To answer your question, it would be closer to calling that a factual variation on Deck. Is there any meaningful difference for purposes of Deck's reasons? The reasoning in Deck is a concern that the restraints are going to have an effect on the jury, right? That's the first reason. Right. So the audible restraints under this hypothetical could trigger that concern, right? So that would be perhaps closer. But again, here, there is no evidence in the record other than a discussion in his – no, there's no evidence in the record that the restraints were audible. And the record shows that Mr. Shirley was seated in his wheelchair at the stand before the jury was brought in. So these restraints were hidden. So Deck is not applicable. Apparently, lots of courts dealing with this problem, trial courts dealing with this problem, will use tape or foam or some other sound-deadening mechanism to quiet chains that they're also trying to hide from the jury. Was anything like that done here? Do we know? I'm not aware of anything in the record talking about that. Is it being done in Milwaukee County courts more generally, which apparently are using these restraints or have been using these restraints a lot? I'm also not aware of any practices. That's not in the record either. But again, the focus here is whether, in this case, the hidden restraints ran afoul of clearly established law. And because Deck simply does not apply, there is no clearly established law that was violated here. Ms. VandenMees, let me just riff on that a bit. As I understand Mr. Dvorak's argument at pages 22 and 23 of his brief, Deck also makes reference to shackling interfering with a defendant's ability to communicate with a lawyer or ability to participate in his own defense. And those are quotes from Deck. If the argument is, you know, Mr. Shirley took the stand, and Mr. Shirley was never able to move about, but all the other witnesses were able to move about, and the factual circumstance that's on trial is this struggle outside the gas station, other witnesses may have been able to physically describe or exhibit things, but Mr. Shirley was not, can't an adverse inference be drawn against Mr. Shirley as a result of that? So to go into the second Deck principle and whether it comes into play here, we'll reiterate that we don't think Deck's principles are enough to get you to clearly establish federal law, because it was a visible restraints case, and those principles were discussed in the context of concerns about visible restraints. But even the case law that kind of digs into this second principle really focuses on concerns such as the use of physical restraints, you know, the total physical restraints preventing communication with counsel or things like that. Here, Mr. Shirley was on the stand, he was communicating with his lawyer, directing the lawyer's hands to exhibits. None of the specific concerns on that second principle were really at play here, if you think about it, and kind of delve into the case law surrounding that second concern. So even assuming that second principle were enough to be clearly established federal law, which we don't believe it is, the Court of Appeals decision, which observed that Mr. Shirley testified extensively, he directed his lawyer's hands to exhibits, all of that analysis would be consistent with the second principle in Deck, so there would not be an unreasonable application of federal law in this instance. In the case of visible restraints, do you think a defendant has to show evidence of prejudice under Deck? Do I think a defendant has to show? The accused defendant. So under Deck, the holding was that visible restraints are inherently prejudicial, such that then the state would have the burden to show that there was a lack of prejudice, I believe. Here, though, we don't have a Deck case, we are under Brecht instead, and so the defendant has the burden to show that, but for the alleged error, there was a substantial and injurious effect on the jury's verdict. So here, Mr. Shirley has not met that burden, and the reason is because what we would have to conclude is that if he would have been able to get off the stand and reenact the event or point to exhibits, that would have been significant enough to change or influence the outcome here. There's just not enough to make that conclusion. The victim in this case sustained at least three gunshot wounds, two to the torso area, one to the back of the head. There was expert testimony about stippling and soot, leading to the most likely conclusion being that it was an intermediate range at which it was fired, which undercuts Mr. Shirley's explanation, but that's really focusing on whether the story was credible is not the inquiry. The inquiry is whether getting off the stand would have influenced the jury's verdict, and we believe that that burden has not been met, but because there was no clear violation of established federal law here, this court need not even reach harmless error. And if there are no other questions, I will cede the rest of my time. Thank you. Thank you, Counsel. The case is taken under advisement.